UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MALIEKA GATITHI, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:19-cv-0486-AGF |
| | ) | |
| BOARD OF IMMIGRATION | ) | |
| APPEALS and WILLIAM BARR, | ) | |
| United States Attorney General, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants' motion for summary judgment (ECF No. 13) in this case on judicial review of a decision of the Board of Immigration Appeals (BIA). For the reasons set forth below, the Court will grant Defendants' motion.

## BACKGROUND

In October 2013, Plaintiff Malieka Gatithi filed with the United States Citizenship and Immigration Services (USCIS) an I-130 Petition for Alien Relative seeking to classify her husband, Hilary Gatithi, as an "immediate relative." USCIS denied the petition on the basis that Mr. Gatithi's previous marriage was a sham, so Plaintiff's I-130 petition was precluded under U.S.C. § 1154(c).[1] Plaintiff appealed to the BIA, which dismissed the appeal. Plaintiff then filed the present petition for judicial review.

The facts relevant to Mr. Gatithi's previous marriage are as follows. Gatithi

---

[1] USCIS clarified that there is no issue as to whether Plaintiff's marriage to Mr. Gatithi is *bona fide*; the denial is premised only on Gatithi's previous marriage.

1

married Ms. Robin Jackson in April 2008. In August of that year, Ms. Jackson filed an I-130 petition to classify Gatithi as her "immediate relative." In support of their application, at their USCIS interview in February 2009, they submitted six wedding photographs, an insurance policy issued to Gatithi, utility bills in both their names, and a one-year residential lease in both names.

In August 2010, during a USCIS inquiry, officers of the Fraud Detection and National Security Directorate (FDNS) attempted to visit the couple at their last known address but were unsuccessful. They located Jackson at a different address and discovered that Gatithi was not living there, but an unknown male and child were inside the home. Jackson identified the child as hers and the man as the father. She explained that she was living at that address with her own father, as he was ill. Although Jackson said she intended to return to live with Gatithi, she was unable to provide his current address and could not identify his country of origin. Jackson also indicated that her family did not know about her marriage to Gatithi.

Following the FDNS visit with Jackson, Gatithi contacted an officer and explained that Jackson had been living with her father for a couple of months and that he (Gatithi) visited often, but he was unable to provide the address. He indicated that Jackson's parents had been unable to attend their wedding because Jackson's mother was in the hospital, but they visited afterward to share the news of their marriage. Gatithi could not provide the first names of Jackson's parents.

FDNS officers also contacted the leasing agent at Gatithi's apartment, who indicated that Gatithi had resided alone there for over a year. His lease application from

April 2009 (two months after the couple's UCSCI interview) was co-signed by a different woman, Ms. Eunice Ngure, whose name was subsequently crossed out, and his signed lease agreement dated November 20, 2009, named only himself as lessee.

About a month after FDNS's investigation, in September 2010, Ms. Jackson withdrew her I-130 application. The couple divorced in June 2012.

Mr. Gatithi and Plaintiff married on August 26, 2013, after which Plaintiff filed an I-130 petition on Gatithi's behalf. After reviewing the application, USCIS issued a Notice of Intent to Deny (NOID) requiring Plaintiff provide further evidence of the legitimacy of Gatithi's previous marriage to Jackson. In response, Plaintiff provided various documents relating to Gatithi's apartment lease and the first couple's divorce, and affidavits by Plaintiff, Gatithi, and Jackson explaining that Jackson could not answer the FDNS officers' questions correctly because she was intimidated and flustered. Noting several inconsistencies in the affidavits and finding them not credible, USCIS determined that Plaintiff's response was insufficient to rebut its finding of a fraudulent first marriage.

Plaintiff appealed to the BIA, which found the evidence sufficient to support USCIS's findings and therefore dismissed her appeal. In reaching that result, the BIA relied on Gatithi's lease documents and the lack of credibility in his and Jackson's responses during the FDNS inquiry. The BIA expressly rejected the notion that Jackson was too shaken to accurately answer simple questions.

In her complaint on judicial review before this Court, Plaintiff contends that the evidence on which the agency relied is not substantial or probative of a fraudulent marriage, and therefore the denial of the petition and subsequent appeal was arbitrary and

3

capricious. Specifically, Plaintiff argues that Gatithi's lease application is not probative because Ms. Ngure might have signed it only to obtain a referral fee and, further, that the lease agreement was not provided to Plaintiff or authenticated by USCIS, violating Plaintiff's due process rights. Plaintiff also argues that the BIA's decision was based on an application that was not an actual lease. Additionally, Plaintiff asserts that Jackson's exchange with FDNS officers should be given little weight because she was intimidated and flustered and under emotional distress at the time. She argues that Jackson's residing with her father and having a child with another man might reflect a bad marriage but does not prove a fraudulent marriage. Finally, Plaintiff asserts that the evidence submitted by Gatithi and Jackson at their initial USCIS interview is sufficient to establish their *bona fide* marriage, and that the mere shortage of photos or bills does not prove fraud.

In response to Plaintiff's complaint, Defendants filed the present motion for summary judgment, arguing that the record contains sufficient evidence of marriage fraud, and therefore the agency did not act arbitrarily or capriciously in denying Plaintiff's appeal. Specifically, Defendants note that: Jackson and Gatithi provided unsatisfactory and contradictory answers; the two were not co-habiting; there was no evidence of a life together beyond six wedding photos and three months of utility bills; Jackson had a child with another man; and Jackson withdrew her I-130 petition for Gatithi. Defendants further argue that Plaintiff did not provide sufficient evidence in response to the NOID to rebut the USCIS's finding of fraud. Though Plaintiff claimed that more photos and utility bills existed, she failed to produce them, and Plaintiff's assertion that Jackson's mental state was impaired at the time of her interview was not

4

credible insofar as Jackson's alleged emotional distress fails to explain her total inability to answer basic questions as to Gatithi's address and country of origin.

## DISCUSSION

**Standards**

Under 8 U.S.C. § 1151(a)(1)(A)(i), a U.S. citizen may apply for an "immediate relative" visa on behalf of his or her spouse. The petitioner has the burden of proving all of the requirements, and the USCIS investigates to determine if the spouse qualifies. *See* 8 C.F.R. §§ 204.1-204. However, approval is precluded if a previous marriage is determined to be fraudulent for the purposes of evading immigration laws and there is substantial and probative evidence of such an attempt or conspiracy. 8 U.S.C. § 1154(c); 8 C.F.R. § 204.2(a)(1)(ii). If the USCIS makes such a finding, the burden is on the petitioner to rebut this by showing that the marriage was *bona fide*. *See Matter of Kahy*, 19 I. & N. Dec. 803, 806–07 (BIA 1988). District courts have jurisdiction to review a decision on the merits of an I-130 petition for an immediate relative. *Opoku-Agyeman v. Perez*, 886 F. Supp. 2d 1143, 1148 (W.D. Mo. 2012) (citing *Ginters v. Frazier*, 614 F.3d 822, 827 (8th Cir. 2010)). The Court reviews the BIA's determination as the final agency decision. *Chakhow v. Lynch*, 837 F.3d 843, 846 (8th Cir. 2016). When the BIA adopts and affirms the fact-finder's decision and adds its own reasoning, the Court reviews both together. *Patel v. Sessions*, 868 F. 3d 719, 723 (8th Cir. 2017) (considering both BIA and immigration judge's decisions); *Opoku-Agyeman*, 886 F. Supp. 2d at 1148 (reviewing BIA decision only, where BIA did not adopt USCIS conclusions). Here, the BIA agreed with USCIS's findings and reasoning and elaborated with its own. As such, we review

both decisions together.

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." "Judicial review of an INS decision denying a petition to change status is governed by the Administrative Procedures Act, 5 U.S.C. §§ 701–06." *Sabhari v. Frazier*, CIV. 06-196 ADM/RLE, 2007 WL 295261, at *6 (D. Minn. Jan. 30, 2007). "The denial of a petition for preferential immigration classification is reviewed for a determination of whether the decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" *Gipson v. I.N.S.*, 284 F.3d 913, 916 (8th Cir. 2002), (citing 5 U.S.C. § 706(2)). An agency decision is arbitrary and capricious when the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs contrary to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *GoJet Airlines, LLC v. F.A.A.*, 743 F.3d 1168, 1170–71 (8th Cir. 2014) (citing *Rochling v. Dep't of Veterans Affairs*, 725 F.3d 927, 937 (8th Cir. 2013)). "This standard of review gives agency decisions a high degree of deference." *Sierra Club v. E.P.A.*, 252 F.3d 943, 947 (8th Cir. 2001). "In reviewing the agency decision, the Court is not permitted to re-weigh the evidence, but is instead limited to determining whether the agency's determination that the record contained substantial and probative evidence of marriage fraud was arbitrary and capricious." *Ginters v. Dooley*, CIV. 07-4681 DWF/LIB, 2011 WL 2961499, at *6 (D. Minn. July 20, 2011). The scope

of review is narrow, and a court is not to substitute its judgment for that of the agency. *Valorem Consulting Group v. U.S. Citizenship & Immigration Services*, 13-1209-CV-W-ODS, 2015 WL 196304, at *2 (W.D. Mo. Jan. 15, 2015) (quoting M*otor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)).

**Analysis**

Applying the foregoing standards, the Court finds that the BIA did not act arbitrarily or capriciously in denying Plaintiff's petition and dismissing her appeal, and Defendants are entitled to summary judgment. The record reflects substantial and probative evidence that Mr. Gatithi's previous marriage to Ms. Jackson was fraudulent. As stated above, Gatithi's lease documents bely co-habitation. His 2009 lease application is co-signed by another woman and names a cousin as an emergency contact. The lease itself bears only Gatithi's initials and signature. Neither spouse could answer basic questions about the other (e.g., their respective addresses, Jackson's parents' names, Gatithi's country of origin), and they contradicted each other on simple facts (e.g., whether Jackson's parents knew of their marriage). The record contained virtually no evidence of a life together. Plaintiff's affidavit recounts the purported history of the first couple's relationship and offers explanations for the discrepancies in their statements to FDNS officers, but Plaintiff would have had no personal knowledge of such details. Mr. Gatithi's own affidavit is written in the third person and contains no probative information beyond the assertion that he was "ready to save his first marriage but things were not working out." Ms. Jackson's affidavit states that her name was not on Gatithi's lease due to her poor credit history, and that her inability to remember Gatithi's

7

whereabouts or nationality was attributable to fear. The agency found these statements unpersuasive, particularly in light of the couple's actual living arrangements and failure to submit additional proof of their life together. A district court affords great weight to the credibility findings of the BIA. *Opoku-Agyeman v. Perez*, 886 F. Supp. 2d at 1149. The foregoing evidence is sufficient to support a conclusion that the marriage was not *bona fide*.

Plaintiff's attempt to re-litigate the evidence and have this Court re-weigh it on judicial review is unavailing. The Court may not substitute its own judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n of U.S.,* 463 U.S. at 43. Rather, the Court must defer to the agency's factual determinations and will disturb the agency's decision only when it is wholly unsupported by the evidence, contrary to the record, or so implausible that it cannot be ascribed to a difference of viewpoint. *GoJet Airlines,* 743 F.3d at 1170–71. On this record, the Court can make no such findings.

"An issue of material fact is genuine if it has a real basis in the record." *Truth in Labeling Campaign v. Shalala*, 999 F. Supp. 1289, 1297–98 (E.D. Mo. 1998) (quoting *Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir.1992)). There is no genuine issue of disputed material fact with a real basis in the present record but only unsupported assertions by Plaintiff, Gatithi, and Jackson, which the agency did not find credible. Consequently, Defendants are entitled to summary judgment.

**Due Process**

Finally, the Court must address Plaintiff's argument that she was denied due process insofar as USCIS based its determination on a non-existent lease that the agency

8

failed to produce. The Court recognizes that the agency's reference to the subject lease documents was inaccurate. The record contains:

- Mr. Gatithi's lease *application*, co-signed by Ms. Ngure on April 26, 2009, and bearing the business address of Kensington Square Apartments, (2100 N. New Florissant);
- a lease *agreement* for Gatithi's actual residence (1393 Beltower Drive) signed only by Gatithi on November 20, 2009;
- the USCIS field officer's report dated September 1, 2010, which correctly references the lease *agreement* and Beltower Drive address and notes that the lease *application* was co-signed by Ngure;
- the NOID dated September 8, 2016, which describes the application but calls it a lease;
- the USCIS decision, which also describes the application but calls it a lease; and
- the BIA decision, which conflates the application and agreement and states that the lease was accurately described in the NOID.

While the agency was careless in its references to the lease documents, the Court cannot say that Plaintiff was denied due process. USCIS is not required to provide "in painstaking detail" the evidence of fraud it finds. *Opoku-Agyeman*, 886 F. Supp. 2d at 1149 (quoting *Ogbolumani. v. Napolitano*, 557 F.3d 729, 735 (7th Cir. 2009). Rather, a summary of the grounds explaining the agency's reason for denial is sufficient. *Id.* (quoting *Ghaly v. I.N.S.*, 48 F.3d 1426, 1435 (7th Cir. 1995)).

Notwithstanding the agency's conflation of related housing documents, the reasoning behind the agency's decision remains the same: the evidence belied the assertion that Gatithi and Jackson were living together. Plaintiff had notice that the documentation relevant to the first couple's co-habitation was problematic and ample opportunity to rebut the agency's finding in this regard. Moreover, the lease

9

documentation in question was only one of several evidentiary bases for the agency's ultimate determination of fraud, which remains adequately supported by other aspects of the record, most notably the spouses' own statements.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment is **GRANTED**. ECF. No. 13. A separate judgment shall accompany this memorandum and order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 14th day of August, 2019.